IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LYNA STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:23-cv-2847-K |
| RAYMOND PARADISE and | § | |
| GREYHOUND LINES, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER ON
PENDING EXPERT MOTIONS**

The motions below have been referred by United States District Judge Ed
Kinkeade to the undersigned United States magistrate judge for determination. *See*
Dkt. No. 130.

Plaintiff Lyna Strong and Defendant Greyhound Lines, Inc. have filed the
following motions to exclude expert testimony:

- Defendant Greyhound Lines, Inc.'s Motion to Exclude or Limit the
  Testimony of Plaintiff's Transportation Safety Expert Thomas J.
  Carrigan [Dkt. No. 118];
- Defendant Greyhound Lines, Inc.'s Motion to Exclude or Limit the
  Testimony of Plaintiff's Human Factors Expert Kevin A. Rider, Ph.D.,
  P.E., C.P.E. [Dkt. No. 120];
- Defendant Greyhound Lines, Inc.'s Motion to Exclude or Limit the
  Testimony of Dr. Scott Barbour [Dkt. No. 122];
- Plaintiff's Motion to Exclude Expert Testimony of Jonathan York, M.D.
  [Dkt. No. 127]; and
- Plaintiff's Motion to Exclude Expert Testimony of Matthew Daecher
  [Dkt. No. 128].

For the reasons and to the extent explained below, the Court DENIES the motions [Dkt. Nos. 118, 120, 122, 127, & 128]. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

**Legal Standards**

### I.    Federal Rule of Evidence 702

> Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*VeroBlue Farms USA Inc. v. Wulf, No.* 3:19-CV-764-X, 2023 WL 348963, at *6 (N.D. Tex. Jan. 20, 2023) (quoting *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up)).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe v. United States*, 516 F. Supp. 3d 660, 679-80 (W.D. Tex. Feb. 2, 2021) (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or

on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's

testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the *ipse dixit* [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 806-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and base his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court

must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that '[t]he *Daubert* reliability analysis applies to, among other things, "the facts underlying the expert's opinion,"' and "an opinion based on 'insufficient, erroneous information, fails the reliability standard.'" *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[ ] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

And "[o]ther evidentiary rules, such as [Federal Rule of Evidence] 403, may still operate to exclude the evidence." *United States v. Posado*, 57 F.3d 428, 435 (5th

Cir. 1995) (citing *Daubert*, 509 U.S. at 595). Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## II.    Federal Rules of Civil Procedure 26 and 37

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In addition to initial disclosures, a party must disclose to the other parties the identity of any witness that it may use at trial to present expert evidence. *See* FED. R. CIV. P. 26(a)(2)(A).

If the witness is one retained or specially employed to provide expert testimony in the case, the report must contain, among other things, "a complete statement of all opinions the witness will express and basis and reasons for them" and "the facts or data considered by the witness in forming them." *See* FED. R. CIV. P. 26(a)(2)(B).

If an expert is not required to provide a report, the disclosure must still provide "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). "A 'summary of opinions' under Rule 26(a)(2)(C) means 'a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case.'" *Tidwell v. Gomez*, No. 5:19-cv-179-H, 2022 WL 20686845, at *2 (N.D. Tex. Aug. 12, 2022) (cleaned up). And "it does not suffice to reference large bodies of material sources of facts without stating a brief account of the main points from those large bodies on

which the expert relies." *Id.*

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No. 3:18-cv-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *accord Coleman v. Chevron Phillips Chem. Co. LP*, No. CV H-23-350, 2024 WL 460248, at *9 (S.D. Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

## Analysis

### I.    Greyhound's Motion to Strike Plaintiff's Expert Mr. Carrigan

Greyhound challenges expert Thomas J. Carrigan's conclusion that "this crash was preventable and 'would not have occurred' if the Greyhound driver had taken

action including placement of triangles instead of relying on flashing hazard lights." Dkt. No. 118 at 1 (quoting Dkt. No. 119 at 29). (The Court's citations to page numbers in the record correspond with document page numbers, which may differ from Bates numbers.)

Greyhound argues that Mr. Carrigan's "opinions are not grounded in accident reconstruction, scientific testing, or any application of reliable methodology to the facts of this case." Dkt. No. 118 at 1. And it contends that his opinions "rely on assumptions rather than data or analysis." *Id.* at 11.

Mr. Carrigan's opinions about Greyhound's maintenance failures were based, in part, on documentation and deposition testimony about the bus's condition. *See* Dkt. No. 138 at 6; *see, e.g.*, Dkt. No. 119 at 16, 22-23. And his conclusions about the decision-making of the bus driver, Defendant Raymond Paradise, were based, in part, on Paradise's deposition testimony. *See* Dkt. No. 138 at 6; Dkt. No. 119 at 15-16.

The "core opinion" of Mr. Carrigan's report – that the accident could have been prevented by placing reflective triangles – was based on national safety standards. Dkt. No. 118 at 1; *see* Dkt. No. 119 at 26-27. Mr. Carrigan's report explains that "[t]he National Safety Council defines a preventable collision as one … in which a driver failed to exercise every reasonable precaution possible in order to avoid impact." Dkt. No. 119 at 27. And, in reviewing records and deposition testimony about the events in this case, he opined that Paradise "failed to take every possible action available to him." *Id.*

And, so, Mr. Carrigan's report is not "impermissibly speculat[ing] as to

causation." Dkt. No. 148 at 2.

And the Court agrees with Strong that, insofar as Mr. Carrigan lacked certain information – such as what Landon Richmond, the driver who hit the bus, saw or could have seen – or did not reconstruct the accident, Greyhound may cross-examine him about these issues at trial. *See* Dkt. No. 138 at 4.

And, so, the Court finds that Mr. Carrigan is reliable and declines to strike his testimony.

## II.    Greyhound's Motion to Strike Plaintiff's Expert Dr. Rider

Greyhound seeks to strike Strong's human factors expert, Dr. Kevin A. Rider. *See* Dkt. No. 120. It argues that Dr. Rider "lacked data on Mr. Richmond's perception-response time due to intoxication or sleep," "admitted that the data he used in his analysis was not specific to impaired or intoxicated drivers," and "rel[ied] on generalized empirical data not tied to Richmond's known condition or case-specific facts." *Id.* at 3, 9.

The Court finds that Dr. Rider's opinions are more than conclusory assumptions.

"Dr. Rider relied on his 20 years of education and experience in the field of human factors" in reaching his conclusions. Dkt. No. 138 at 6. He conducted his own inspection of the collision site. *See* Dkt. No. 121 at 5. He referenced the Federal Motor Carrier Safety Regulations, a Commercial Driver License manual, and driver visibility studies. *See id.* at 7-9. And he used a program called Response, which compiles "hundreds of research studies into a linear regression model to evaluate

expected driver behaviors under case-specific circumstances." *Id.* at 10.

Dr. Rider used these resources to reach an expected perception-response time for Mr. Richmond at the time of the collision. *See id.* And, so, Dr. Rider's conclusion that failing to use "proper warning devices created a dangerous condition for eastbound drivers, including Mr. Richmond," is not "so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

And, in creating his report, Dr. Rider considered his observations from his site inspection and the evidence that Mr. Richmond "had reportedly been drinking falling asleep while driving." Dkt. No. 121 at 9. So his analysis is not "so dissimilar to the facts presented that [his] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

As to any "disconnect" that may exist between the data and research used by Dr. Rider and the circumstances of the collision, Dkt. No. 149 at 1, the Court agrees with Strong that those differences go to the weight, not admissibility, of Dr. Rider's testimony, *see* Dkt. No. 139 at 3. Greyhound may cross-examine Dr. Rider about, for example, how Richmond's mental state or driving speed are distinguishable from the studies on which Dr. Rider relied.

And, so, the Court finds that Dr. Rider's testimony is reliable under Rule 702 and *Daubert*. And it declines to strike his testimony.

## III.    Greyhound's Motion to Strike Plaintiff's Expert Dr. Barbour

Greyhound moves to strike or limit the testimony of Strong's non-retained expert and treating physician Dr. Scott A. Barbour because it is unreliable and

irrelevant. *See* Dkt. Nos. 122 & 150.

The Court addresses each of Greyhound's arguments in turn.

A. <u>The Court disagrees that emails between Dr. Barbour's staff undermine his testimony's reliability.</u>

Greyhound contends that emails from Dr. Barbour's office show that his conclusions are "litigation-driven." Dkt. No. 122 at 11. Greyhound points to email exchanges between Dr. Barbour's staff saying that "Barbour said *absolutely not* to holding this surgery on paper." *Id.* (emphasis in original). It contends that the phrase "'holding the surgery on paper' refers to documenting or attributing the surgery to the accident for litigation purposes, often as part of a deferred payment arrangement or letter of protection." *Id.* at 1 n.1; *see* Dkt. No. 150 at 3.

Strong responds that the email exchanges are impermissible hearsay, that Greyhound's meaning of "holding this surgery on paper" is speculative, and that Greyhound's argument is a "challenge to Dr. Barbour's credibility [that] should be directed to the jury." Dkt. No. 137 at 8.

Without addressing whether the emails are hearsay, the Court agrees that the language in the emails between Dr. Barbour's staff is ambiguous. *See id.* The Court declines to attribute the meaning put forth by Greyhound to those statements.

Even if Greyhound's interpretation were correct, the Court also agrees that the statements would go to Dr. Barbour's credibility, not to the reliability or basis of his opinion. *See id.* And, "in reviewing a *Daubert* challenge, the court makes no credibility determinations; it only decides whether the threshold reliability standards have been satisfied." *Andrews v. Rosewood Hotels & Resorts, LLC*, 575 F. Supp. 728, 733 (N.D.

Tex. 2021) (citing FED. R. EVID. 702 Advisory Committee's Notes (2000 Amendments)).

> B. <u>The Court disagrees that Dr. Barbour's reliance on self-reporting makes his testimony unreliable.</u>

Greyhound argues that Dr. Barbour's opinion is unreliable because his "causation conclusion stemmed from [Strong]'s self-reporting" instead of "objective criteria," "clinical standards," or "recognized methodology." Dkt. No. 122 at 6.

In addition to taking Strong's self-reported patient history, Dr. Barbour took X-rays and reviewed past medical records and images in reaching his conclusion that the collision "aggravated" her preexisting knee condition. Dkt. No. 137 at 10; *see id.* at 29-31, 37, 51, 78.

In its reply, Greyhound argues that Dr. Barbour's "testimony that the accident 'aggravated' [Strong's] condition is … based only on [her] subjective complaints of worsening pain, not on any reliable medical basis for distinguishing aggravation from natural progression." Dkt. No. 150 at 2.

Even so, "[c]ourts should not exclude a doctor's expert testimony 'under *Daubert* solely on the ground that his causation diagnosis was based only on his patient's self-reported history,' because this goes to weight rather than admissibility." *Barber v. Tractor Supply Co.* No. PE-24-cv-20-DC-DF, 2025 WL 2403030, at *3 (W.D. Tex. Mar 23, 2025) (citing *Lilley v. Home Depot USA, Inc.*, 567 F. Supp. 2d 953, 957 (S.D. Tex. 2008); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423) (5th Cir. 1987) ("[A] patient's oral history is generally considered reliable.")).

And, insofar as Dr. Barbour's opinion is contradicted by the records he

reviewed, "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

And, so, Dr. Barbour's "reliance on physical examinations, post-incident imaging, and self-reported patient history is fodder for cross-examination – not grounds for exclusion." *Barber*, 2025 WL 2403030, at *3 (cleaned up).

C. <u>The Court disagrees that Dr. Barbour's admission that Strong had a preexisting condition makes his testimony unreliable.</u>

Greyhound contends that Dr. Barbour's conclusions are unreliable because he "acknowledges Ms. Strong's preexisting degenerative knee conditions" and "did not attribute [her] need for bilateral total knee replacements solely – or even primarily – to the accident." Dkt. No. 122 at 4-5.

Dr. Barbour's recognition of Strong's preexisting injury does not make his opinion inadmissible. Under state law, "a defendant must compensate a plaintiff for unforeseeable injuries flowing from some pre-existing physical condition." Dkt. No. 137 at 5 (quoting *Schmidt v. United States*, No. 1:18-cv-88-DAE, 2020 WL 13199268, at *1 (W.D. Tex. Mar. 20, 2020) (cleaned up)).

And, in any event, Greyhound's argument confuses the reliability of Dr. Barbour's opinion with its effect on the merits of Strong's claims. The Court will not accept arguments challenging reliability on the basis that an opinion "fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). Such arguments "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Id.*

-18-

D. <u>The Court disagrees that Rule 403 requires excluding Dr. Barbour's testimony.</u>

Greyhound argues that allowing Dr. Barbour to testify about the cause of Strong's injuries would cause the jury to "confuse his role as a treating physician and to treat his litigation testimony as established medical fact." Dkt. No. 150 at 5.

The risk that Mr. Barbour's conclusion that the collision aggravated Strong's preexisting condition will mislead the jury is not substantial. The jury's role is to determine the weight of Dr. Barbour's testimony. Any internal inconsistences in Dr. Barbour's testimony can be developed for the jury on cross-examination.

And, so, the probative value of Dr. Barbour's testimony is not outweighed by the danger of confusing the jury, and Rule 403 does not warrant excluding his opinion.

For the reasons explained above, the Court declines to strike Dr. Barbour's testimony.

## IV.    Strong's Motion to Strike Defense Expert Dr. York

Strong moves to exclude Greyhound's expert Dr. Jonathan York. *See* Dkt. No 127. She challenges the reliability and relevance of his opinions under Rule 702. *See id*. at 3.

The Court declines to exclude Dr. York.

Strong contends that Dr. York should be excluded because of "the unreliability of the foundation of [his] opinions." *Id*. at 2. She alleges that Dr. York "fail[ed] to disclose what medical records he relied upon" to form causation opinions about her injuries. *Id*. at 3.

But Dr. York based his opinions on Strong's "long documented history of

bilateral knee pain" along with his own independent medical examination. Dkt. No. 140-1 at 2. Dr. York noted Strong's history of "knee pain, arthroscopic surgeries … advanced arthritis documented by MRIs, and conservative treatment such as viscosupplementation" to form his opinion. Dkt. No. 140 at 7; Dkt. No. 140-1 at 2. Dr. York's opinions are not "speculative assumptions but instead represent fact-based findings from his independent medical examination and review of [Strong's] medical records." Dkt. No. 140 at 7.

Dr. York also has over 30 years of orthopedic practice and experience, with a focus on knee and shoulder arthroscopy. *See* Dkt. No. 140 at 2. The Court agrees that experience alone is not a foundation for expertise. *See Viterbo,* 826 F.2d at 424. But Dr. York applies his experience to "documented patient medical records and oral patient history." Dkt. No. 140 at 7.

Strong also contends that Dr. York's methodology behind his opinions is unreliable. *See* Dkt. No. 127. She asserts that Dr. York did not use any records prior to the collision in forming his opinion. *See id.* at 4. And she alleges that Dr. York did not review any medical literature, MRI images, or pre-collision x-rays "[i]n the absence of medical records pre-dating the collision." *Id.*

But Dr. York reviewed post-accident documents that "contained historical data about [Strong's] condition prior to the May 2, 2022 collision." Dkt. No. 140 at 7. So Dr. York was aware of Strong's multiple knee surgeries predating the collision. *See* Dkt. No. 140-1 at 2-3.

The Court agrees with Greyhound that "it is reasonable for a physician to draw

from summaries, surgical histories, or patient histories contained within later-produced documents" to evaluate a particular patient. Dkt. No. 140 at 7. And the Court agrees that whether Dr. York should have reviewed MRI images or medical literature is a matter for cross-examination. *See id*. at 8.

And, so, the Court finds that Dr. York's opinions are reliable and relevant under Rule 702. And the Court declines to exclude Dr. York's opinions.

**V.    Strong's Motion to Strike Defense Expert Mr. Daecher**

Strong moves to strike Greyhound's expert Matthew Daecher. *See* Dkt. No 128. She challenges only his qualifications. *See id.*

Strong argues that Mr. Daecher "did not do an accident reconstruction analysis … is not a conspicuity expert … and is not a mechanic." *Id*. at 3-4.

And, so, Strong contends that Mr. Daecher is not qualified to conclude that (1) the likelihood that the proper use of triangles would have prevented this collision is questionable; (2) the conspicuity of the bus was not affected by the bus's mechanical condition; and (3) Greyhound's inspection and maintenance program exceeds federal regulatory requirements, and the bus in question was inspected and maintained regularly. *See id*. at 2.

The Court addresses Mr. Daecher's qualifications to reach each conclusion in turn.

A.    <u>Likelihood of Triangles to Prevent the Collision</u>

Strong argues that Mr. Daecher is not qualified to conclude that "the likelihood that the proper use of triangles would have prevented [the] accident is questionable" because he did not perform an accident reconstruction. *Id*. at 3.

But Mr. Daecher is not "offering opinions grounded in reconstruction methodology." Dkt. No. 141 at 7. Mr. Daecher was retained to determine "whether the conduct of the driver … met the expectations of a reasonably prudent commercial operator under the circumstances." *Id.* at 8.

Mr. Daecher has "significant experience in practices related to safe operations in commercial vehicle and commercial fleets." Dkt. No. 141-3 at 2. And his consulting practice "routinely involves evaluating driver conduct, fleet safety procedures, accident preventability, and regulatory compliance." Dkt. No. 141 at 7.

There are "sufficient indicia" that Mr. Daecher can "provide a reliable opinion" on the absence of triangle deployment. *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018) (quoting *Huss v. Gayden*, 571 F.3d 442, 455-56 (5th Cir. 2009)).

And, so, the Court finds that Mr. Daecher is qualified to provide an expert opinion on the absence of triangle deployment in this case.

B. <u>Conspicuity of the Greyhound Bus</u>

Strong argues that Mr. Daecher is not qualified to testify on the conspicuity of the Greyhound bus because he is "neither a conspicuity expert nor a human factors expert." Dkt. No. 128 at 4.

But the opinions Mr. Daecher provides are "not based on human factors modeling." Dkt. No. 141 at 10. They are "practical safety observations and judgments drawn from real-world commercial fleet experience, informed by the conditions depicted in the physical evidence." *Id.*

Mr. Daecher's testimony is not based on scientific analysis of perception or reaction times. Rather, his testimony "fits squarely within his role as a transportation safety expert." *Id*. Mr. Daecher has "personally investigated and/or provided litigation support/consultation in hundreds of vehicular accidents, most involving commercial vehicles." Dkt. No. 141-3 at 2. So Mr. Daecher is "not offering opinions beyond the scope of his designation." Dkt. No. 141 at 10.

And, so, the Court finds that Mr. Daecher is qualified to provide an expert opinion on the conspicuity of the Greyhound bus in this case.

C. <u>Inspection and Maintenance of the Greyhound Bus</u>

Strong argues that, because Mr. Daecher is not a mechanic, he is not qualified to opine that Greyhound's maintenance exceeded federal regulatory requirements. *See* Dkt. No. 128 at 4.

But Mr. Daecher is not "explain[ing] the inner workings of diesel engines or … render[ing] mechanical diagnoses." Dkt. No. 141 at 11. Rather, Mr. Daecher is offering an opinion on "whether [Greyhound] maintain[ed] regulatory-compliant programs for inspection, maintenance, and repair." *Id*.

Strong also argues that Mr. Daecher's maintenance-related testimony is conclusory and inadmissible under Rule 702. *See* Dkt. No. 128 at 4. But Mr. Daecher offers this testimony based on a comprehensive review of the available records. *See* Dkt. No. 141-1 at 2-7. His opinion is a "practical review" of Greyhound's maintenance program in relation to governing standards. Dkt. No. 141 at 12. And his testimony fits within Mr. Daecher's "long-established expertise … with commercial vehicle

maintenance standards." *Id*. at 11.

And, so, the Court finds that Mr. Daecher is qualified to provide an expert opinion on Greyhound's inspection and maintenance schedules. And the Court declines to exclude Mr. Daecher's opinions.

### Conclusion

The Court rules on the parties' five expert motions as explained above.

SO ORDERED.

DATED: November 7, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE